DOCKET & FILE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK AND JOE MARTENS, ACTING COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION and Trustee of Natural Resources, | No. 07-CV-2902 (KAM/RML) |

Plaintiffs,

-against-

EXXON MOBIL CORPORATION and
EXXONMOBIL REFINING AND SUPPLY
COMPANY,

Defendants.

**CONSENT DECREE**

TABLE OF CONTENTS

Page

I.      Definitions................................................................................................4

II.     General Principles......................................................................................5

III.    Recovery System Operation, Expansion, Evaluation, and Optimization ....................8

IV.     Groundwater Evaluation and Remediation ...................................................8

V.      Soil Evaluation and Remediation...............................................................9

VI.     Interim Remedial Measures ......................................................................9

VII.    Review of Submissions..............................................................................9

VIII.   Reporting.................................................................................................10

IX.     Civil Penalties ........................................................................................10

X.      Environmental Benefit Projects ...............................................................10

XI.     New York Natural Resource Damages.......................................................12

XII.    Stipulated Penalties.................................................................................13

XIII.   Force Majeure ........................................................................................14

XIV.    Entry upon Site .......................................................................................15

XV.     Access ....................................................................................................16

XVI.    Payment of State Costs ............................................................................16

        A. Past State Costs ................................................................................16

        B. Future Oversight Costs .....................................................................17

XVII.   Reservation of Rights..............................................................................18

XVIII.  Indemnification – Third-Party Claims .....................................................19

XIX.    Notice of Change of Title ........................................................................19

XX.     Communications .....................................................................................20

XXI.    Dispute Resolution..................................................................................21

i

XXII.     Release and Covenant Not to Sue .............................................................................. 23

XXIII.    Meetings.................................................................................................................. 24

XXIV.    Citizen Participation Plan ........................................................................................ 25

XXV.     Closure .................................................................................................................... 25

XXVI.    Miscellaneous ......................................................................................................... 25

XXVII.   Effective Date ......................................................................................................... 27

XXVIII.  Continuing Jurisdiction ........................................................................................... 28

XXIX.    Signatories............................................................................................................... 28

WHEREAS, the State of New York, through its attorney, Attorney General Andrew M. Cuomo, and the New York State Department of Environmental Conservation ("NYSDEC" or the "Department" together with the State of New York, the "State Plaintiffs") have agreed to this Consent Decree (the "Decree") with ExxonMobil (as defined below) for the purpose of investigating the scope and extent of environmental contamination and/or remediating that environmental contamination at the Site (as defined below);

WHEREAS, it is the intent of the State Plaintiffs and ExxonMobil that the definition of the Site herein does not, and will not, be interpreted to overlap with the site definitions used in other administrative and judicial orders in which the State Plaintiffs are a party, under which ExxonMobil is obligated to take investigative or remedial action, except as expressly provided in such orders or herein;

WHEREAS, the State of New York has the right to abate public nuisances under the common law, and the Attorney General is empowered to bring public nuisance actions on behalf of the State and its citizens;

WHEREAS, NYSDEC is responsible for carrying out the policy of the State of New York to conserve, improve and protect its natural resources and environment and control water, land, and air pollution consistent with the authority granted to NYSDEC and the Commissioner by Article 1, Title 3 of the New York Environmental Conservation Law ("ECL");

WHEREAS, NYSDEC is responsible for the enforcement of Article 12 of the Navigation Law ("NL"), entitled "Oil Spill Prevention, Control and Compensation," and Article 17 of the ECL, entitled "Water Pollution Control," and for inactive hazardous waste disposal site remedial programs pursuant to Article 27, Title 13 of the ECL;

WHEREAS, pursuant to Titles 3 and 10 of Article 17 of the ECL and Article 12 of the NL, NYSDEC is authorized to regulate the storage and handling of petroleum in the State of New York;

WHEREAS, pursuant to Titles 3 and 5 of Article 17 of the ECL and Article 12 of the NL, NYSDEC is authorized to prevent and abate the unregulated discharge of petroleum;

WHEREAS, NL§173 prohibits the discharge of petroleum, and NL§176 and §32.5 of Title 17 of the New York Codes, Rules and Regulations ("NYCRR") require that a person responsible for a discharge of petroleum take immediate steps to contain, clean up and remove such discharge;

WHEREAS, NL§181 provides that a discharger of petroleum is liable for cleanup and removal costs and direct and indirect damages no matter by whom sustained;

WHEREAS, ECL§17-0501 prohibits any person from directly or indirectly throwing, draining, running or otherwise discharging into the waters of the State, organic or inorganic matter which causes or contributes to a condition in contravention of the standards adopted pursuant to ECL§17-0301;

WHEREAS, ECL§71-1941 provides that a person having possession of 1,100 gallons or more of petroleum, who discharges such petroleum to the lands or waters of the state, is liable for the costs of removing such petroleum and mitigating the effects of the discharge;

WHEREAS, the ECL and NL each provide for civil penalties, enforceable for violations of the above stated provisions;

WHEREAS, the federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §6972(a), provides that owners and operators of solid waste disposal facilities are liable for the cleanup of solid wastes and hazardous materials disposed of at their facilities;

WHEREAS, the federal Clean Water Act ("CWA"), 33 U.S.C.§1311(a), prohibits the discharge of any pollutant from a point source without a permit or in contravention of a permit;

WHEREAS, the federal Oil Pollution Act ("OPA"), 33 U.S.C.§2701 and 2702(a), provides that an owner or operator of an onshore facility is liable for any removal costs and damages resulting from the discharge of oil from the facility;

WHEREAS, the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.§9607, provides that responsible owners, operators, and generators are jointly and severally liable for costs of removal and remediation of hazardous substances;

WHEREAS, the Standard Oil Company of New York owned and operated petroleum refining and storage facilities collectively known, at times, as the Brooklyn Refinery and Terminal, in Greenpoint, Brooklyn, New York. These facilities included, *inter alia*, a large tank farm property, refinery, and storage facility that encompassed certain sections of the land now bounded by North Henry Street, Greenpoint Avenue, Norman Avenue, and Apollo Street in Brooklyn, and Newtown Creek. The State Plaintiffs contend that in the course of their historical operations at these facilities, ExxonMobil's predecessors spilled, leaked, released, discharged, or otherwise discarded petroleum, pollutants, solid and hazardous wastes, and other substances into the environment. The State Plaintiffs further contend that the discharge of contaminants from the activities of ExxonMobil's predecessors has created a plume of petroleum and other contaminants upon and dissolved within the groundwater at and around the Site, which the State Plaintiffs allege has also contaminated the surface soils, subsurface soils, and sediments in Newtown Creek;

WHEREAS, Mobil Oil Corporation ("Mobil") owned and operated a refinery located between Greenpoint and Norman Avenues, Brooklyn, New York, prior to 1968; became a wholly owned subsidiary of Exxon Mobil Corporation in 1999; and subsequently changed its name to ExxonMobil Oil Corporation;

WHEREAS, ExxonMobil is doing business in the State of New York;

WHEREAS, Mobil began operation of its on-site recovery system in 1979;

2

WHEREAS, in February 1990, NYSDEC entered into an administrative Order on Consent with Mobil (the "On-Site Order"), under the NL and ECL for, *inter alia*, investigation and remediation of the plume of free product under the oil refinery site;

WHEREAS, in June 1990, NYSDEC entered into a separate administrative Order on Consent with Mobil under the NL and ECL for, *inter alia*, investigation and remediation of the free product that had allegedly migrated through the subsurface and off the refinery site (the "Off-Site Order");

WHEREAS, Mobil and, after 1999, ExxonMobil have been conducting remediation of the free product pursuant to, *inter alia*, the On-Site Order and the Off-Site Order since 1990;

WHEREAS, between the years of 1991-1993, Mobil designed an off-site recovery system, which became operational in 1995;

WHEREAS, ExxonMobil has performed soil vapor and ambient air testing within the Site and is implementing a soil vapor extraction mitigation system approved by NYSDEC;

WHEREAS, on February 8, 2007, the State Plaintiffs served notices to ExxonMobil of the State's intent to sue pursuant to the citizen suit provisions of RCRA, 42 U.S.C. §6972(a)(1)(B), and the citizen suit provisions of the CWA, 33 U.S.C.§1365(a)(1), and also mailed copies of those notices to the Administrator of the United States Environmental Protection Agency ("EPA") and to the Commissioner of NYSDEC, as required under the CWA, 33 U.S.C.§1365(b)(1)(A), and RCRA, 42 U.S.C.§6972(b)(2)(A);

WHEREAS, the State Plaintiffs have filed a complaint (the "State Complaint") alleging claims against ExxonMobil pursuant to, *inter alia*, the ECL, the NL, the citizen suit provisions of the RCRA, the citizen suit provisions of the CWA, OPA, and CERCLA, in which action the State Plaintiffs seek, *inter alia*, (A) to hold ExxonMobil liable for (1) the remediation of the Site and surrounding groundwater; (2) costs and expenses incurred by the State in responding to the release of contaminants and hazardous substances at the Site; (3) damages to the State's natural resources; (4) future response costs and expenses to be incurred by the State in responding to releases at the Site; and (5) penalties for each violation of the above referenced laws; and (B) an order enjoining ExxonMobil from further discharges of hazardous substances or other contaminants into the groundwater and Newtown Creek in violation of law;

WHEREAS, the State Plaintiffs are diligently pursuing this action in part to abate conditions that the State Plaintiffs contend may present an imminent and substantial endangerment to human health and the environment;

WHEREAS, this Decree is intended to resolve all claims asserted in the State Complaint, except as stated below in Articles XVII and XXII;

WHEREAS, it is the intent of the parties and the Court that the remediation of the petroleum contamination at the Site be completed expeditiously, subject to the criteria of the DER-10 Technical Guidance for Site Investigation and Remediation;

3

WHEREAS, the existence of this Decree or ExxonMobil's compliance with it shall not be construed as either an admission of liability, fault, wrongdoing, or breach of standard of care by ExxonMobil, and shall not give rise to any presumption of law or finding of fact, or create any rights, or grant any cause of action, which shall inure to the benefit of any third party;

WHEREAS, ExxonMobil, without admitting or denying liability, desires to settle and resolve the claims against it;

WHEREAS, ExxonMobil reserves such rights as it may have to seek and obtain contribution, indemnification, and/or any other form of recovery from its insurers and from other potentially responsible parties or other third parties or their insurers for past or future investigation, remediation, response and/or cleanup costs or such other costs or damages arising from the contamination at the Site as may be provided by law, including but not limited to rights of contribution and/or cost recovery under CERCLA;

WHEREAS, this Court has: (1) original jurisdiction over the federal statutory claims in the State Complaint and alleged in this Decree pursuant to 28 U.S.C. § 1331, 33 U.S.C. § 1365(a)(1), 42 U.S.C. § 6972(a)(1)(B), 33 U.S.C. § 2701 *et seq.*, 42 U.S.C. §§ 9607 and 9613, and 28 U.S.C. § 2201; (2) supplemental jurisdiction, under 28 U.S.C. § 1367, for the remaining claims contained in the State Complaint and this Decree; and (3) jurisdiction to enter a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 9613; and

WHEREAS, venue is proper in this District pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b) because the alleged releases of petroleum, pollutants, solid and hazardous wastes, and/or hazardous substances that give rise to this action occurred and/or are occurring in this District and the Site is located in this District.

NOW, therefore, IT IS STIPULATED by and between the State Plaintiffs and ExxonMobil and IT IS HEREBY ORDERED AND DECREED:

## I.    Definitions

1.    The term "Site" shall be defined as the bounded areas indicated on the map attached hereto as Exhibit 1 ("Site Map"), up to and including any bulkheads of any type that border the defined Site, except where no bulkhead exists, then the Site shall extend to the high water mark, as defined in 33 C.F.R.§328.3(e), of Newtown Creek;

2.    The term "ExxonMobil" shall be defined as Exxon Mobil Corporation, ExxonMobil Refining and Supply Company, ExxonMobil Oil Corporation and all of their predecessors and successors.

3.    The term "ExxonMobil's Operations" shall be defined as ExxonMobil's historical operations within the Site or activities of employees, consultants, or contractors of ExxonMobil within the Site. All references to historical operations in the Corrective Action Plan ("CAP") annexed hereto as Exhibit 2 shall mean ExxonMobil's Operations as so defined.

4

## II.     General Principles

4.      Within the portion of the Site in which ExxonMobil formerly owned or operated, or currently owns or operates, facilities, including certain pipelines located on the Site (collectively, the "Historical Footprint," as indicated on the Site Map), ExxonMobil shall be presumptively responsible for investigation and remediation of contamination in all media. ExxonMobil shall also be presumptively responsible for investigation of contamination within the Site where the Department has a technically reasonable basis to conclude that existing contamination emanated from ExxonMobil's Historical Footprint and followed a preferential pathway such as a utility or pipeline.

5.      In portions of the Site outside the Historical Footprint, ExxonMobil shall be presumptively responsible for investigation and remediation of petroleum-related contamination in media located at or below the area where free product occurred in the soil and was then retained in the soil when the water table fluctuated between historic high and low water table elevations, such area to be known for purposes of this Decree as the "Retention Zone." ExxonMobil shall also be presumptively responsible for investigation and remediation of petroleum-related groundwater and petroleum-related soil vapor contamination within the boundaries of the Site.

6.      Notwithstanding the foregoing, (a) in portions of the Site outside the Historical Footprint, ExxonMobil shall not be responsible for investigation and remediation of soil contamination that is either (i) outside the historic extent of the free product plume as delineated by agreement of the State and ExxonMobil on the Site Map, or (ii) located above the Retention Zone, unless the State establishes, pursuant to Paragraph 8, that the contamination migrated from the Historical Footprint or otherwise resulted from ExxonMobil's Operations; and (b) in portions of the Site outside the Historical Footprint, ExxonMobil shall not be responsible for investigation and remediation of hazardous substances that are not petroleum-related, unless the State establishes, pursuant to Paragraph 8, that the contamination migrated from the Historical Footprint or otherwise resulted from ExxonMobil's Operations.

7.      To overcome any presumption of responsibility that applies to any contamination within the Site based on the prior paragraphs, ExxonMobil shall bear the burden of demonstrating to the Department by a preponderance of the evidence that the contamination was not caused by ExxonMobil's Operations. If ExxonMobil disagrees with the determination of the State, they shall consult together in good faith and exercise best efforts to resolve any differences or disputes as to whether ExxonMobil has met its burden. The period for such informal negotiations shall not exceed thirty (30) days, unless it is otherwise agreed by both of the parties, in writing, to extend the negotiations. If the parties cannot resolve the dispute by informal negotiations, the dispute will be submitted to the formal dispute resolution process as described in Paragraph 82. Following the completion of the dispute resolution process described in Paragraph 82, the Parties may seek judicial resolution as described in Paragraph 83. The State and ExxonMobil reserve all rights under applicable court rules and law with regard to judicial resolution of any such dispute.

8.      In order for ExxonMobil to bear responsibility for investigation and/or remediation of (a) any contamination outside the Site, or (b) soil contamination outside the

Historical Footprint that is either (i) outside the historic extent of the free product plume, or (ii) located above the Retention Zone, the State shall bear the burden of demonstrating by a preponderance of the evidence that the contamination was caused by ExxonMobil's Operations. The State and ExxonMobil shall consult together in good faith and exercise best efforts to resolve any differences or disputes as to whether the State has met its burden. The period for such informal negotiations shall not exceed thirty (30) days, unless it is otherwise agreed by both of the parties, in writing, to extend the negotiations. If the parties cannot resolve the dispute by informal negotiations, the determination of the State shall be considered binding unless ExxonMobil seeks relief from the Court within thirty (30) days after the conclusion of the informal negotiation period, in which case the State shall bear the burden of demonstrating by a preponderance of the evidence that the contamination was caused by ExxonMobil's Operations. The State and ExxonMobil reserve all rights under applicable court rules and law with regard to judicial resolution of any such dispute.

9.    a) When ExxonMobil must remediate contamination that is commingled with the contamination of others, ExxonMobil will be responsible for contamination caused by its Operations that is commingled with contamination from other sources, but shall only be required to continue remediation until remedial obligations are achieved, as determined by the Department, for the contamination caused by ExxonMobil's Operations.

b) Notwithstanding anything else in this paragraph, in areas within the Site adjacent to the properties identified on the Site Map as the BP Property, the Peerless Property, and the 100-120 Apollo Street Property, ExxonMobil shall follow the requirements of the CAP with respect to any petroleum-related contamination at or below the Retention Zone. Solely for purposes of this Decree, ExxonMobil shall not contend that such contamination or any portion thereof is not ExxonMobil's remedial responsibility pursuant to this Decree; *provided, however*, that this paragraph shall not limit or otherwise affect ExxonMobil's ability to maintain in any other setting that some or all of any such contamination was caused by others. In particular, ExxonMobil expressly reserves the right to seek contribution from any other party who may be responsible for contamination in the area within the Site adjacent to the BP Property, the Peerless Property, and the 100-120 Apollo Street Property.

10.    The State shall not direct ExxonMobil to investigate or remediate any contamination on the BP Property unless and until NYSDEC has exhausted its administrative remedies against BP Products North America with respect to that property. The State shall not direct ExxonMobil to investigate or remediate any contamination on the Peerless Property or the 100-120 Apollo Street Property unless and until NYSDEC has exhausted its administrative remedies against Texaco, Inc. In the event that the State does direct ExxonMobil to investigate or remediate any contamination on the BP Property, the Peerless Property, or the 100-120 Apollo Street Property, ExxonMobil will only be responsible for remediating contamination that was caused by ExxonMobil's Operations.

11.    For any investigation of contamination in connection with the property identified on the Site Map as the Metro Property, unless the State has clear evidence that any such contamination is solely attributable to ExxonMobil's Operations, the State shall contact the Metro Fuel Oil Corporation ("Metro"), or the then-current property owner, and request that it perform such an investigation. If Metro or the then-current property owner does not agree to

6

perform such an investigation, then the State may request that ExxonMobil and Metro, or the then-current property owner, perform such an investigation. The State shall not seek damages (including Natural Resource Damages), civil or administrative penalties or other monetary relief against ExxonMobil and hereby releases ExxonMobil from any such State claims with respect to any contamination within the Metro Property. The State reserves the right to seek to compel ExxonMobil to remediate contamination on the Metro Property that emanated from the Site and was caused by ExxonMobil's Operations, and ExxonMobil reserves any and all defenses in connection with any such effort.

12. None of the foregoing presumptions shall create any rights with respect to any third party, and no third party shall have the benefit of any of the foregoing presumptions.

13. The CAP is incorporated herein in full, and each and every obligation and requirement in the CAP is deemed and agreed to be an obligation or requirement of this Decree. With the exception of work plans and reports, the CAP may only be modified by Order of the Court, *provided, however*, that if the Court takes no action within twenty (20) days of receiving notification of a modification agreed to by the parties, then the modification shall be considered approved by the Court. In the event of inconsistent language between this Decree and the CAP, the Decree shall be considered the controlling authority, except with respect to Paragraphs 17 through 26 of this Decree where the CAP shall be considered the controlling authority.

14. In performing its obligations under this Decree, ExxonMobil shall comply with the dates and deadlines in this Decree and the Milestone Schedule attached to the CAP as Attachment A (the "Milestone Schedule"). If the parties agree to modify the date of any Major Milestone (defined as items 1-3, 6-8, and 13-14 in the Milestone Schedule), the parties shall promptly notify the Court of the modification, and the Court shall have authority to approve or disapprove that modification. If the Court has taken no action within twenty (20) days of receiving notification of the modification, then the modification shall be considered approved by the Court. All other milestones in the Milestone Schedule may be modified by agreement of NYSDEC and ExxonMobil with notification to the Court. Dates not contained in the Milestone Schedule that may be set by NYSDEC pursuant to the CAP may be modified by agreement of NYSDEC and ExxonMobil without notification to the Court.

15. All activities at the Site shall be consistent with the ECL, NL, and applicable NYSDEC-approved policies and procedures for petroleum remediation.

16. All determinations with respect to the selection of remedies and the extent of remedial action required under this Decree shall be made by NYSDEC after consultation with the New York State Attorney General's Office ("NYSOAG"). NYSDEC's evaluations of certain proposed remedial actions are also subject to the Memorandum of Understanding (the "State MOU") between NYSDEC and NYSOAG fully executed on October 27, 2010. ExxonMobil shall not be bound by the State MOU or any term or condition therein. Nothing in this Decree nor any provision of the State MOU shall be construed as an endorsement by ExxonMobil of the State MOU. ExxonMobil reserves its rights to challenge any and all aspects of the State MOU. NYSDEC and NYSOAG (i) shall promptly provide ExxonMobil with complete copies of all technical information, and any factual information or evidence submitted by or on behalf of NYSDEC or NYSOAG under State MOU Article III(2) to the peer review panel (the "Panel")

7

contemplated by the State MOU under Article III(1); (ii) shall require that the Panel reports referenced in State MOU Article III(4) include a detailed written analysis of the basis of its ruling including the application of each DER-10 criterion to the facts and the justification supporting its determination, and (iii) shall promptly provide ExxonMobil with all reports the Panel issues to NYSDEC or NYSOAG under State MOU Article III(4).

## III.    Recovery System Operation, Expansion, Evaluation, and Optimization

17.    ExxonMobil shall continue to operate the existing product recovery systems to remove liquid-phase free product and groundwater from beneath the Site in accordance with the CAP.

18.    ExxonMobil shall complete a Recovery System Evaluation Report ("RSER") to evaluate the effectiveness of the current recovery system in accordance with the CAP.

19.    ExxonMobil shall complete a Product Recovery Optimization Feasibility Study Report ("PROFSR") in accordance with the CAP, within three hundred (300) days following NYSDEC approval of the RSER.

20.    Due to the importance of maintaining hydraulic control of the petroleum plume, ExxonMobil shall continue to operate its recovery well and treatment system, except as provided below. If an exceedance of the effluent limits noted in its applicable State Pollutant Discharge Elimination System ("SPDES") permit is reasonably anticipated or has occurred, ExxonMobil shall promptly notify NYSDEC, investigate the reason for the actual or anticipated exceedance, and take such action as is necessary to prevent such exceedance or further exceedances, which may include, but is not limited to, recovery system adjustments to flow rates and pump settings of the recovery wells or seeking a modification of the SPDES permit. This provision is solely for the purpose of this Decree and shall not apply or be considered precedent for any other site or case. From time to time, ExxonMobil will also need to temporarily shut down its systems for routine maintenance, repairs, and/or upgrades, and NYSDEC will be informed of planned or unplanned temporary shutdowns per the notification requirements of CAP Paragraph XII.C. Such temporary shutdowns shall not constitute a violation of the terms of this Consent Decree, the CAP or any law or regulation. If ExxonMobil is unwilling or unable to continue operation of its SPDES system due to exceedances of its SPDES permit or is prohibited by the EPA from continuing to discharge from its system, ExxonMobil must propose upgrades to its system to allow compliance with the SPDES permit and the standards in the receiving waters, and/or propose alternative remedial measures acceptable to NYSDEC to remediate the petroleum plume and dissolved phase petroleum contamination.

## IV.    Groundwater Evaluation and Remediation

21.    ExxonMobil shall conduct an evaluation of the horizontal and vertical extent of the dissolved phase groundwater contamination, as set forth in the CAP.

22.    ExxonMobil shall complete an Alternative Analysis Report ("AAR") concerning groundwater remediation, develop a Remedial Action Work Plan ("RAWP") and implement a remedy for groundwater approved by NYSDEC, as described in the CAP.

## V.      Soil Evaluation and Remediation

23.     ExxonMobil shall prepare an evaluation of the horizontal and vertical extent of contamination of the soil, as set forth in Paragraph VI of the CAP.

24.     ExxonMobil shall complete an AAR concerning soil remediation, develop a RAWP and implement a remedy for soil approved by NYSDEC, as described in the CAP.

## VI.      Interim Remedial Measures

25.     Except as otherwise provided herein, ExxonMobil shall implement emergency measures to collect and control seep outbreaks emanating from the Site, if any, and provide a work plan to investigate and remediate seepage, pursuant to Paragraph XI.A. of the CAP.

26.     ExxonMobil shall prepare and implement a preliminary work plan with respect to any Interim Remedial Measures selected pursuant to Paragraph XI.B. of the CAP.

## VII.      Review of Submissions

27.     After review of any AAR, RAWP, or other plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree (each a "Submission"), NYSDEC may, in addition to any other responses or actions permissible under applicable policies, procedures, statutes, regulations, or common law: (a) request a meeting to discuss the Submission; (b) return the Submission without comment and require a re-assessment of recommendations and conclusions; (c) approve, in whole or in part, the Submission; (d) approve the Submission upon specified conditions; (e) require specific modifications of the Submission to cure the noted deficiencies; (f) disapprove, in whole or in part, the Submission, directing that ExxonMobil modify the Submission; or (g) any combination of the above. Nothing in this paragraph is intended to or shall be interpreted to limit in any way the rights or authority of NYSDEC under applicable policies, procedures, statutes, regulations, or common law.

28.     In the event of NYSDEC's approval, approval upon conditions, or approval after required modifications of a Submission, ExxonMobil shall proceed to take any action required by the Submission subject only to their right to invoke the Dispute Resolution procedures set forth in Article XXI with respect to any required modifications or conditions. In the event that NYSDEC requires a modification of the Submission, NYSDEC retains its right to seek stipulated penalties, as provided in Article XII below, if a satisfactory Submission is not timely received. ExxonMobil reserves any and all rights and defenses it may have in such proceedings.

29.     If NYSDEC disapproves a Submission, in whole or in part, it shall specify the reasons for its disapproval, and ExxonMobil shall, within forty-five (45) days after written notice of disapproval, make a revised Submission that addresses all of NYSDEC's stated reasons for disapproving the first Submission. In the event that NYSDEC disapproves a Submission and requests additional analysis or engineering evaluations that require more than forty-five (45) days to complete, ExxonMobil shall, within thirty (30) days after written notice of disapproval, provide a schedule for completion of a revised Submission that addresses all of NYSDEC's stated reasons for disapproving the first Submission. In the event that ExxonMobil's revised Submission is disapproved, NYSDEC shall set forth its reasons for such disapproval in writing

and ExxonMobil shall be in violation of this Decree unless it invokes dispute resolution pursuant to Article XXI and its position prevails, or as otherwise determined by the Court.

30.     Each approved work plan shall be incorporated into and become an enforceable part of this Decree upon approval by NYSDEC.  It shall also be filed with the Court by the State Plaintiffs within ten (10) days of approval, unless (i) the State Plaintiffs determine that its filing is not necessary to implementation of this Decree, or (ii) public notice by filing is not required by the Citizen Participation Plan described in the CAP.

## VIII.     Reporting

31.     ExxonMobil shall submit all reports required by, and comply with all obligations described in, Article IV of the CAP and Milestone Schedule, Attachment A of the CAP.

## IX.     Civil Penalties

32.     ExxonMobil is hereby assessed a civil penalty in the amount of $250,000 pursuant to the ECL and NL, of which $200,000 shall be transferred to the New York State Environmental Protection and Spill Compensation Fund (the "Spill Fund").  Subject to the reservation of rights set forth in Article XVII below, this $250,000 civil penalty is in final and complete resolution of the violations of law that were alleged or could have been alleged by State Plaintiffs in the State Complaint related to any contamination within the Site existing as of the execution of this Decree, known or unknown, or any contamination outside the Site, known or unknown, that emanated from the Site and was caused by ExxonMobil.  ExxonMobil shall pay the above stated sum within forty-five (45) days of the Effective Date of this Decree, by check made payable to the order of the State of New York.  ExxonMobil shall submit such settlement payment as required by this Decree to:

Todd D. Ommen
New York State Attorney General's Office
120 Broadway, 26th Floor
New York, NY 10271

33.     A portion of this penalty in the amount of $50,000 shall be transferred to the State of New York and utilized by the State for the benefit of marine resources.  This penalty is assessed pursuant to the ECL and NL and shall not constitute or be considered as payment by ExxonMobil relating to any claim arising under federal law.

34.     A copy of the transmittal letter shall be sent to Benjamin A. Conlon, Esq., at the address listed in Paragraph 78 of this Decree.  This civil penalty amount is in addition to the payments required by Paragraphs 35, 43, 59, and 61 below.

## X.     Environmental Benefit Projects

35.     Within forty-five (45) days of the Effective Date of this Decree, ExxonMobil shall pay the sum of $19,500,000 for Environmental Benefit Projects ("EBPs") to benefit the environment and public health in the Greenpoint, Brooklyn area, in accordance with NYSDEC's Commissioner Policy-37, "Environmental Benefit Projects Policy," dated November 14, 2005, or

such subsequent EBP policy as NYSDEC may adopt (the "NYSDEC EBP Policy"). Such EBPs will be designed to secure significant environmental improvements and address the adverse environmental impacts associated with the violations alleged in the State Complaint. Accordingly, the EBPs will address environmental areas of concern that include but are not limited to water quality, groundwater, open space, reduction of toxic pollution, and air quality.

36.     ExxonMobil shall make the $19,500,000 payment specified in Paragraph 35 to NYSOAG, which shall hold the funds in an escrow account.

37.     NYSDEC and NYSOAG will select an independent community outreach consultant upon execution of the Decree. Reasonable hourly costs and expenses up to $50,000 may be paid to the consultant from the escrow account to facilitate informational meetings and visioning workshops as outlined below. With the assistance of the consultant, NYSDEC and NYSOAG will initiate a consultation process to provide input from the Greenpoint community to the State regarding the general allocation of EBP funds that would best serve the environment in the Greenpoint neighborhood. This process shall include but not be limited to convening community informational meetings in Greenpoint, Brooklyn to discuss the EBP selection process and holding community "visioning" workshops to discuss which categories of EBPs will best serve the community's environmental and public health needs.

38.     NYSOAG, after receiving the consultant's comments with respect to the community's preferences, shall allocate amounts specified by NYSDEC and NYSOAG to non-profit fiscal administrators ("EBP Administrators") that NYSDEC and NYSOAG will select based on their experience and expertise in the management of projects to benefit the environment and other relevant factors.

39.     Each Administrator selected shall solicit EBP proposals, review them and propose that certain EBPs be approved by NYSDEC and NYSOAG. Each Administrator selected shall be required to enter into a separate memorandum of understanding ("EBP MOU") with NYSDEC and NYSOAG. The EBP MOU shall require that the funds shall be kept in a separate account and will be used to fund one or more projects designed and/or proposed by the Administrator. The EBP MOU shall further provide that: (1) the Administrator shall seek community input and consultation in proposing and designing such projects, including through a Request for Proposal process if appropriate; (2) any projects selected, designed, and proposed thereunder shall adhere to the requirements of the NYSDEC EBP Policy; (3) NYSDEC and NYSOAG shall have final approval over the projects selected; (4) the Administrator shall have no more than five years from the Effective Date of this Decree to expend or to enter into a funding commitment or commitments to expend the money in the account, unless NYSDEC and NYSOAG decide to extend this time limit; and (5) NYSDEC and NYSOAG shall have the right to direct the Administrator to pay any uncommitted funds remaining in the account five years after the Effective Date of this Decree to an alternative non-profit organization selected by NYSDEC and NYSOAG to receive and administer that money pursuant to an EBP MOU with NYSDEC and NYSOAG, consistent with this Section.

40.     NYSDEC and NYSOAG have identified potential EBP Administrators based on their experience and expertise as administrators in the areas noted in this paragraph. The listing of potential EBP Administrators in this paragraph does not guarantee the entities listed, or create

an entitlement to, the receipt of EBP funds or to any particular amount of EBP funds. Nor does the listing preclude other entities from being selected by NYSDEC and NYSOAG as EBP Administrators. The potential EBP Administrators identified to date include the following non-profit organizations :

    a.    Open Space Alliance of Northern Brooklyn, which has been identified for its knowledge and expertise in administering projects related to the development, restoration, and improvement of parks;

    b.    Brooklyn Community Foundation, which has been identified for its knowledge and expertise in green communities;

    c.    Hudson River Foundation New York City Environmental Fund, which has been identified for its expertise in grant-making for environmental education and stewardship, programs to increase awareness of and access to natural resources, green infrastructure, and energy efficiency;

    d.    National Fish and Wildlife Foundation, which has been identified for its expertise in a grant-making program for fish and wildlife habitat protection and restoration, stormwater runoff mitigation and capture, and green infrastructure projects;

    e.    Pollution Prevention (P2) Institute, which has been identified for its expertise in projects designed to reduce toxic pollution.

41.    ExxonMobil shall have no performance obligations with respect to the EBPs.

42.    ExxonMobil agrees, for federal and state income tax purposes, that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in funding EBPs in accordance with this Decree.

## XI.    New York Natural Resource Damages

43.    In addition to the monies set forth in Paragraphs 32 and 35 above, and Paragraphs 59 and 61 below, within forty-five (45) days of the Effective Date of this Decree, ExxonMobil shall pay the one-time sum of $250,000 to State Plaintiffs for Natural Resource Damages based upon an injury alleged by the State to natural resources as described in Paragraph 44. This amount shall be sent to the address set forth in Paragraph 32 above, and the check shall be made payable to "the New York State Natural Resource Damages Account" and shall be submitted to the State Natural Resource Damages Trustee. No other provision of this Decree, or use of funds pursuant to any other provision of this Decree (including without limitation Paragraphs 32 and 35), shall constitute or be considered as payment by ExxonMobil for damages as a result of any injury to, destruction of, or loss of natural resources, and nothing in this Decree shall affect or diminish the rights of the federal or non-State natural resource trustees as designated pursuant to 42 U.S.C.§9607(f)(2) to pursue claims for injury to, destruction of, or loss of natural resources caused by contamination at the Site or any contamination outside the Site that emanated from the Site.

44.    Subject to the reservation of rights set forth in Paragraph 74 below, $240,000 of the payment specified in Paragraph 43 constitutes the final and complete resolution of all allegations in the State Complaint of injury to, destruction of, or loss of natural resources solely under State trusteeship, and $10,000 of the payment specified in Paragraph 43 constitutes the final and complete resolution of all allegations in the State Complaint for injury to, destruction

of, or loss of all other natural resources sustained by the State Plaintiffs at the Site or as a result of any contamination outside the Site that emanated from the Site and was caused by ExxonMobil. Subject to the reservation of rights set forth in Paragraph 74, and as further described in Paragraph 86 below, State Plaintiffs release ExxonMobil from any and all claims for natural resource damages (i) sustained by the State Plaintiffs at the Site, and (ii) sustained by the State Plaintiffs outside the Site due to contamination that emanated from the Site and was caused by ExxonMobil. Subject to the reservation of rights set forth in Paragraph 74, the State Plaintiffs further agree not to initiate, pursue, or join in any administrative or judicial actions against ExxonMobil for any natural resource damages incurred by the State Plaintiffs related to any contamination within the Site or any contamination outside the Site that emanated from the Site and was caused by ExxonMobil. The above-referenced $10,000 payment shall not affect the claims of any other trustee of those natural resources, and shall be without prejudice to any future valuation by other trustees for natural resource damages claims reserved pursuant to Paragraph 74. No payments under this Decree shall constitute payments for damages to any natural resources of Newtown Creek, its tributaries, or downstream water bodies. Payment of the foregoing sums does not operate as the resolution or release by the United States, including its agencies, or any non-State natural resource trustee, of any claims for damages for injury to, destruction of, or loss of natural resources sustained at or in relation to the Site. As part of the consideration for this State release, ExxonMobil hereby waives, and agrees not to assert in any future proceeding relating to natural resource damages resulting from releases at or from the Site on behalf of any non-State trustee, any defense or offset to any claim by a non-State trustee based on *res judicata* or on the provision of Section 107(f)(1) of CERCLA barring double recovery of damages for the same release and to the same natural resources.

45.     The payments made pursuant to Paragraph 43 shall be held by NYSDEC in the New York State Natural Resource Damages Account, which is an interest-bearing account, and said monies shall only be spent to restore, replace or acquire the equivalent of the natural resources alleged in this action to be injured, including services and expenses related to assessment for restoration, replacement or acquisition, planning, oversight, implementation, and monitoring related thereto.

## XII.    Stipulated Penalties

46.     Except as otherwise set forth herein, ExxonMobil's failure to comply with any provision of this Decree or Attachment A of the CAP constitutes a violation of this Decree (a "Violation").

47.     In the event of any Violation that is not (i) excused pursuant to the Force Majeure provisions of Article XIII of this Decree, or the Access provision of Paragraph 58 of this Decree, or as a result of the Dispute Resolution process herein; or (ii) determined by the State Plaintiffs, in their sole discretion, to be *de minimis*, ExxonMobil shall pay a stipulated penalty to the State Plaintiffs in the amounts set forth below for each calendar day following the date of the Violation as long as such failure continues:

13

| Days After Accrual Date | Stipulated Penalties Per Violation Per Day |
|---|---|
| 1 – 15 | $ 1,000.00 |
| 16 – 30 | $ 5,000.00 |
| 31 – 45 | $ 7,500.00 |
| 46+ | $ 15,000.00 |

48.    In the event State Plaintiffs believe that a Violation has occurred, State Plaintiffs shall promptly give ExxonMobil written notice of such Violation, which shall include an explanation of the alleged Violation. As soon as reasonably possible, State Plaintiffs shall provide ExxonMobil an opportunity to confer regarding the non-compliance matter (which may be done telephonically).

49.    With respect to Violations related to Submissions, stipulated penalties shall not begin to accrue until State Plaintiffs have given ExxonMobil written notice of the non-compliance pursuant to Article VII above and ExxonMobil has failed to remedy the non-compliance within fifteen (15) days of receiving written notice of such alleged non-compliance. If, on the 16th day following receipt of this written notice, ExxonMobil has not cured the non-compliance, ExxonMobil shall be liable for stipulated penalties from the date of notice of non-compliance. This 15-day period shall not apply where the non-compliance is a failure to carry out a remedial obligation under the CAP, and, with respect to such Violations, stipulated penalties shall accrue from the date the Violation began, as set forth in Paragraph 47.

50.    Unless ExxonMobil invokes Dispute Resolution, pursuant to Article XXI, any stipulated penalty owed under this Decree shall be payable to State Plaintiffs forty-five (45) days from the first day of accrual of the stipulated penalty pursuant to the preceding paragraph and for as long as the violation continues. A copy of the check or wire transfer order authorization, and of any covering letter shall be sent to the persons identified in Paragraph 32. The payment of stipulated penalties shall not alter in any way ExxonMobil's obligation to complete the performance required under this Decree.

51.    Subject to the other provisions and conditions of this Consent Decree, if ExxonMobil incurs any stipulated penalty pursuant to this Decree, State Plaintiffs shall have judgment against ExxonMobil and ExxonMobil consents to the entry of a judgment for such stipulated penalty. Simple interest shall accrue on any stipulated penalty not paid when due at the rate of nine percent (9%) per annum.

## XIII.    Force Majeure

52.    ExxonMobil shall not suffer any penalty or be subject to any proceeding or action in the event it cannot comply with any requirement of this Decree as a result of any Force Majeure Event, which events include acts of God, fires, explosions, epidemics, riots, war, rebellion, sabotage, delay in receiving permits or approvals from State Plaintiffs or any other governmental agency after submitting a timely and complete application, the revocation of any such permits or approvals, a change in or collapse of any bulkhead or public right of way or any other condition that was not caused by the negligence or willful misconduct of ExxonMobil and that could not have been avoided by ExxonMobil through the exercise of due care.

14

a.  ExxonMobil must take reasonable steps to avoid foreseeable Force Majeure Events, reasonable efforts to address any such event as it is occurring, and reasonable efforts following the Force Majeure Event to minimize delay. "Force Majeure" does not include ExxonMobil's economic inability to comply with any obligation or the failure of ExxonMobil to make complete and timely application for any required approval or permit.

b.  ExxonMobil shall notify State Plaintiffs in writing within fifteen (15) days of the earlier of the onset of any Force Majeure Event or the date on which ExxonMobil had knowledge of the Force Majeure Event.

c.  ExxonMobil shall have the burden of proving by a preponderance of the evidence that (i) the Violation or anticipated Violation has been or will be caused by a Force Majeure Event; (ii) the duration of any delay or the extension sought is warranted under the circumstances; (iii) reasonable efforts were exercised to avoid and mitigate the effects of the Violation; and (iv) ExxonMobil complied with the requirements of Subparagraph 52(b) regarding timely notification.

d.  If State Plaintiffs agree that the delay or anticipated delay is attributable to a Force Majeure Event, the time for performance of the obligations that are affected by the Force Majeure Event shall be extended for a period of time equivalent to the time lost because of the Force Majeure Event.

e.  Subject to the other provisions and conditions of this Consent Decree, if State Plaintiffs reject ExxonMobil's assertion that an event provides a defense to non-compliance with this Decree, ExxonMobil shall be in violation of this Decree, unless ExxonMobil prevails during Dispute Resolution or the Court determines otherwise.

53.    In the event that ExxonMobil cannot comply with any term of this Consent Decree or the CAP due to a delay in receiving permits or approvals from State Plaintiffs or any other governmental agency after submitting a timely and complete application, ExxonMobil shall notify State Plaintiffs in writing, including documentation, of such delay and seek appropriate modification of this Consent Decree or the CAP, which shall not be unreasonably withheld.

## XIV.    Entry upon Site

54.    ExxonMobil hereby consents to entry onto the Site, and areas in the vicinity of the Site, which are under the control of ExxonMobil by any duly designated officer or employee of the State and by any agent, consultant, contractor, or other person so authorized by State Plaintiffs (each a "State Agent"), all of whom shall abide by the health and safety rules in effect, for inspecting, sampling, copying records related to contamination, testing, and any other activities necessary to effectuate the provisions of this Decree and to ensure ExxonMobil's compliance with this Decree. Upon request, ExxonMobil shall (i) provide NYSDEC with suitable work space at the Site, including access to a telephone, Internet access, and other necessary utilities, and (ii) permit, upon reasonable advance notice, State Plaintiffs full access to all non-privileged records relating to matters addressed by this Decree. Raw data collected or

15

prepared by ExxonMobil in the course of implementation of this Decree are not considered privileged, and any portion of any privileged document containing such raw data must be provided to State Plaintiffs, upon reasonable notice. Nothing in this Paragraph shall affect or diminish the rights of the United States with respect to entry onto the Site.

55.    ExxonMobil shall allow State Plaintiffs to attend and observe, and shall notify State Plaintiffs of, any significant field activities. Nothing in this Decree shall be construed to require ExxonMobil to allow State Plaintiffs to attend portions of meetings where privileged matters are discussed.

56.    NYSDEC or its duly designated State Agent shall have the right to take its own samples and scientific measurements and NYSDEC and ExxonMobil shall each have the right to obtain split samples, duplicate samples, or both, of all substances and materials sampled. After completion of quality assurance and quality control procedures, NYSDEC or its duly designated State Agent shall make the results of any such sampling and scientific measurements made or conducted by NYSDEC or the State Agent available to ExxonMobil.

## XV.    Access

57.    ExxonMobil shall use its "best efforts" to obtain all Site access, permits, easements, rights-of-way, rights-of-entry, approvals, institutional controls, or authorizations necessary to perform its obligations under this Decree. If ExxonMobil is unable to gain access to a location that NYSDEC has determined must be accessed for investigation or remediation required under this Decree or is unable to obtain building or zoning permits associated with the work, NYSDEC agrees, solely at the request of ExxonMobil and to the extent authorized by law, to assist ExxonMobil in gaining such access or permits. If, even with NYSDEC assistance, such access is still unavailable to ExxonMobil, NYSDEC will, to the extent that it deems necessary, legally obtain access for NYSDEC's contractors to do such work, in which case NYSDEC shall consider hiring ExxonMobil's contractor to do such work, provided that such consideration must be consistent with NYSDEC's normal contractual procurement procedures. If NYSDEC has to utilize its contractors, ExxonMobil shall, within forty-five (45) days of receipt of the bills, reimburse NYSDEC for all costs that the State incurs.

58.    ExxonMobil's inability to gain access on commercially reasonable terms to a location, which NYSDEC has determined must be accessed pursuant to this Decree, or to obtain any permits necessary for the work, in a timely manner, despite its best efforts, shall not be deemed non-compliance with this Decree.

## XVI.    Payment of State Costs

## A.    Past State Costs

59.    Within forty-five (45) days of the Effective Date of this Decree ExxonMobil shall pay to the State the one-time sum of one million five hundred thousand dollars ($1,500,000.00), which shall represent reimbursement for the State's past costs for work performed by the State and State Agents related to the Site prior to entry of this Decree.

**B.    Future Oversight Costs**

60.    Within forty-five (45) days after receipt of an itemized invoice with supporting documentation from the State, ExxonMobil shall pay to State Plaintiffs a sum of money which shall represent reimbursement of Oversight Costs (as defined below) incurred by the State and/or third-party contractors retained by the State in the implementation of this Decree and the CAP. Such itemized invoices and supporting documentation shall be sent to ExxonMobil's Project Manager at the address provided by ExxonMobil. Oversight Costs shall mean such costs incurred by the State and/or any third-party contractors retained by the State during the monitoring of ExxonMobil remedial and investigative actions, including the review of ExxonMobil submissions.

61.    The State and ExxonMobil agree to a cap on reimbursement of the total future Oversight Costs (the "Total Future Cost Cap") of three million five hundred thousand dollars ($3,500,000.00). The Total Future Cost Cap shall be subject to an annual increase (the "Annual Total Increase") of four percent (4%) of the amount of the Total Future Cost Cap that has not yet been paid to the State. The Annual Total Increase is to be computed at the beginning of each calendar year. For example, if the State incurs $350,000 of reimbursed Oversight Costs in the calendar year following the Effective Date of this Decree, the amount remaining under the Total Future Cost Cap at the time of computation of the Annual Total Increase would be $3,150,000, the Annual Total Increase would be $126,000, and the new Total Future Cost Cap would be $3,276,000, as of the beginning of the following calendar year.

62.    The State and ExxonMobil agree to an annual calendar cap (the "Annual Future Cost Cap") representing the maximum amount of Oversight Costs for which ExxonMobil will reimburse the State in any calendar year. This Annual Future Cost Cap shall be five hundred thousand dollars ($500,000).

63.    Should the federal government take a supervisory role with regard to this Decree or with regard to investigation or remediation of the Site, or require ExxonMobil to carry out investigation or remediation activities in connection with the Site, the Total Future Cost Cap shall be reduced by 50% of its value as of the time the federal government takes such action and the Annual Future Cost Cap shall be reduced to one hundred and twenty-five thousand dollars ($125,000).

64.    The State shall submit invoices documenting the costs it incurs in the implementation of the Decree and the CAP. Once ExxonMobil has reimbursed the State an amount equal to the Total Future Cost Cap, ExxonMobil shall not be responsible for any additional costs incurred by the State.

65.    Personal service costs shall be documented by reports of Direct Personal Service, which shall identify the employee name, title, billable hourly rate, and time spent (in hours) on the project during the billing period, as identified by an assigned time and activity code. Approved fringe benefit and indirect cost rates shall be applied. Non-personal service costs shall be summarized by category of expense (*e.g.*, supplies, materials, travel, contractual) and shall be documented by expenditure reports. The State shall not be required to provide any other

17

documentation of State costs, *provided however*, that State records shall be available consistent with, and in accordance with, Article 6 of the Public Officers Law.

## C.   All Costs, Generally

66.    Each such payment shall be made payable to the "Department of Environmental Conservation" and shall be sent to: Bureau of Program Management, Division of Environmental Remediation, New York State Department of Environmental Conservation, 625 Broadway, Albany, New York 12233-7012, Attn: Bureau Director.

67.    ExxonMobil may contest, in writing, invoiced costs under Paragraphs 60 and 64 if it believes that (i) the cost documentation contains clerical, mathematical, or accounting errors; (ii) the costs are not related to the State's activities with respect to the Site; or (iii) the State is not otherwise legally entitled to such costs. If ExxonMobil objects to an invoiced cost, ExxonMobil shall pay costs not objected to within the time frame set forth in Paragraph 60 and shall, within thirty (30) days after their receipt of an invoice, identify, in writing, all costs objected to and the basis of the objection. This objection shall be filed with the Director of the Bureau of Program Management, Division of Environmental Remediation, NYSDEC (the "BPM Director"). The BPM Director or the BPM Director's designee shall have the authority to relieve ExxonMobil of the obligation to pay invalid costs. Within forty-five (45) days after the date of the NYSDEC's determination of the objection, ExxonMobil shall either pay to NYSDEC the amount that the BPM Director or the BPM Director's designee determines ExxonMobil is obligated to pay or commence formal dispute resolution pursuant to Paragraph 82.

68.    In the event any instrument for the payment of any money due under this Decree fails of collection, such failure of collection shall constitute a violation of this Decree, *provided* that (i) State Plaintiffs give ExxonMobil written notice of such failure of collection, and (ii) State Plaintiffs, in the same manner as provided for by Paragraph 66 above, do not receive from ExxonMobil a certified check, bank check, or wire transfer in the amount of the uncollected funds within fourteen (14) days after the date of State Plaintiffs' written notification.

## XVII.   Reservation of Rights

69.    Nothing contained in this Decree shall be construed as barring, diminishing, adjudicating, or in any way affecting any of State Plaintiffs' rights or authorities as against any and all third parties.

70.    Subject to the other provisions and conditions of this Consent Decree, if ExxonMobil fails to comply with any of the requirements of this Decree, NYSDEC reserves its right to perform the work required hereunder and State Plaintiffs reserve the right to impose stipulated penalties against ExxonMobil and the right to seek enforcement from the Court.

71.    Notwithstanding any other provision of this Decree, if, with respect to this Site or the projects of this Decree, there currently exists or may exist in the future a claim on the part of the Spill Fund against ExxonMobil or any of its successors or assigns based upon a recovery by third parties from the Spill Fund, nothing in this Decree shall be construed, or deemed to preclude the State of New York from recovering such amounts from ExxonMobil or any of its successors or assigns. Upon receipt of claims by third parties against the Spill Fund involving

18

contamination in or around the Site, the State shall give written notice to ExxonMobil of such third-party claims.

72.    Notwithstanding any other provision of this Decree, the State of New York reserves the right to seek civil penalties for contamination not in existence as of the execution of this Decree.

73.    ExxonMobil reserves its rights to recover costs incurred under this Decree from any appropriate third party, other than the State of New York or the New York State Environmental Protection and Spill Compensation Fund.

74.    State Plaintiffs reserve their rights against ExxonMobil with respect to: (i) investigation and remediation of Newtown Creek, its tributaries, and downstream water bodies; (ii) penalties related to Newtown Creek, its tributaries, and downstream water bodies, accruing after the Effective Date hereof; and (iii) natural resource damages to Newtown Creek, its tributaries, and downstream water bodies. The Parties acknowledge that such matters may be addressed through negotiations or litigations that include third parties, and reserve their respective rights and defenses with respect thereto.

75.    The existence of this Decree or ExxonMobil's compliance with it shall not be construed as either an admission of liability, fault, wrongdoing, or breach of standard of care by ExxonMobil, and shall not give rise to any presumption of law or finding of fact, or create any rights, or grant any cause of action, which shall inure to the benefit of any third party. Further, ExxonMobil reserves such rights as it may have to seek and obtain contribution, indemnification, and/or any other form of recovery from its insurers and from other potentially responsible parties or other third parties or their insurers for past or future investigation, remediation, response and/or cleanup costs or such other costs or damages arising from the contamination at the Site as may be provided by law, including but not limited to rights of contribution and/or cost recovery under CERCLA.

## XVIII.    Indemnification – Third-Party Claims

76.    ExxonMobil shall indemnify and hold NYSDEC, the State, and their representatives and employees harmless for all third-party claims, suits, actions, damages, and costs resulting from the acts and/or omissions of ExxonMobil, intentional, negligent, or otherwise, of every nature and description, arising out of or resulting from the compliance or attempted compliance with the provisions of this Consent Decree by ExxonMobil or its employees, servants, agents, successors, or assigns.

## XIX.    Notice of Change of Title

77.    If ExxonMobil proposes to transfer by sale or lease the whole or any part of ExxonMobil's interest in property at the Site, ExxonMobil shall, at least forty-five (45) days before the date of transfer, notify State Plaintiffs in writing of the identity of the transferee and of the nature and proposed or actual date of the conveyance, and shall notify the transferee in writing, with a copy to State Plaintiffs, of the applicability of this Decree. However, such obligation shall not extend to the granting of any rights under any mortgage, deed, trust, assignment, judgment, lien, pledge, security agreement, lease, or any other right accruing to a

19

person not affiliated with ExxonMobil to secure the repayment of money or the performance of a duty or obligation.

## XX.    Communications

78.    All written communications required by this Decree shall be transmitted by United States Postal Service, private courier service, or hand delivery as follows:

a.    Communication from ExxonMobil shall be sent as follows:

Three hard copies (one unbound) of reports and comments to reports or work plans are required, as well as one electronic copy, pdf format; two hard copies and one electronic copy, pdf format, of all other communications to:

Remedial Projects Manager
Division of Environmental Remediation
New York State Department of Environmental Conservation
625 Broadway, 12th Floor
Albany, New York 12233-7016
(exhampst@gw.dec.state.ny.us)

One hard copy and one electronic copy of any submission to:

Benjamin A. Conlon, Esq.
Office of the General Counsel
New York State Department of Environmental Conservation
625 Broadway, 14th Floor
Albany, New York 12233-5500
(bxconlon@gw.dec.state.ny.us)

One hard copy and one electronic copy of any submission to:

Todd D. Ommen, Esq.
Deputy Bureau Chief
New York State Attorney General's Office
Environmental Protection Bureau
120 Broadway, 26th Floor
New York, NY 10271
(todd.ommen@ag.ny.gov)

b.    Communication from State Plaintiffs shall be sent as follows:

Three hard copies (one unbound) of reports and work plans or comments thereto are required, as well as one electronic copy, pdf format; two copies and one electronic copy, pdf format, of all other communications to:

Steve P. Trifiletti, Project Manager
ExxonMobil Environmental Services Company
400 Kingsland Avenue
Brooklyn, NY 11222
(steve.p.trifiletti@exxonmobil.com)

One hard copy and one electronic copy of any submission to:

Joseph T. Walsh, Esq.
Exxon Mobil Corporation
800 Bell Street, #1540D
Houston, TX 77002
(joseph.t.walsh@exxonmobil.com)

One hard copy and one electronic copy of any submission to:

Daniel J. Toal, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(dtoal@paulweiss.com)

79.     State Plaintiffs and ExxonMobil reserve the right to designate additional or different addressees for communication upon written notice to the other.

80.     Each party shall notify the other within thirty (30) days after any change in an addressee or address in Paragraph 78.

## XXI.     Dispute Resolution

### 81.     Informal Resolution

a.     If ExxonMobil disagrees with any determination under this Decree ("Determination") concerning, but not limited to, notices relating to any asserted failure to comply with the Decree, a submittal required by this Decree, any portion of any request of ExxonMobil to invoke the Force Majeure provision of this Decree, the amount of the State's costs, or the violation of any other provision of this Decree, ExxonMobil's remedies for dispute resolution under this Decree shall be limited to the administrative remedies and challenge in federal court set forth in this Article XXI.

b.     If it wishes to dispute any Determination, ExxonMobil must, within thirty (30) days of receipt of notice of such Determination, make a written request, with notice to NYSDEC and NYSOAG, for informal negotiations with NYSDEC in an effort to resolve the dispute.  NYSDEC may also make a written request for informal negotiations if a dispute arises.  NYSDEC and ExxonMobil shall consult together in good faith and exercise best efforts to resolve any differences or

21

disputes without resort to the procedures described in Paragraph 82. The period for informal negotiations shall not exceed thirty (30) days, unless it is otherwise agreed by both of the parties, in writing, to extend the negotiations. The parties agree to extend subsequent compliance dates appropriately during the period of informal negotiations.

c.    If the parties cannot resolve a dispute by informal negotiations, NYSDEC's determination in dispute shall be considered binding unless ExxonMobil invokes dispute resolution provisions provided under Paragraph 82.

**82.    Formal Dispute Resolution**

a.    If ExxonMobil wishes to invoke formal dispute resolution, it shall file with the NYSDEC Office of Hearings and Mediation ("OH&M") and serve on NYSDEC, within thirty (30) days after the conclusion of the informal negotiation period, a request for formal dispute resolution and a written Statement of Position on the matter in dispute, which shall include, but not be limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by ExxonMobil. Within thirty (30) days after receipt of ExxonMobil's Statement of Position, NYSDEC shall serve on ExxonMobil its Statement of Position, including, but not limited to, any factual data, analysis or opinion supporting that position and all supporting documentation relied upon by NYSDEC. The parties may agree in writing to allow a shorter or longer amount of time for the submission of their respective Statements of Position.

b.    An administrative record of the dispute shall be maintained by NYSDEC and shall contain all Statements of Position, including supporting documentation, submitted pursuant to Subparagraph 82(a).

c.    The OH&M can conduct meetings, in person or via video or telephone conferences, allow submission of supplemental Statements of Position, and/or request testimony or other proofs or evidence, by the parties to the dispute. ExxonMobil shall have the burden to prove by a preponderance of the evidence that the disputed determination by NYSDEC does not have a technically reasonable basis and should not prevail.

d.    The OH&M shall issue a written administrative decision resolving the dispute based upon the administrative record described in Subparagraph 82(b).

e.    The decision of the OH&M shall be the Final Administrative Decision. Such Final Administrative Decision shall be considered binding unless ExxonMobil seeks judicial review pursuant to Paragraph 83. The parties agree to extend subsequent compliance dates appropriately during the period of formal dispute resolution, unless it is determined by the OH&M that the challenge was brought in bad faith.

22

83.    **Judicial Resolution**

a.      ExxonMobil may challenge a Final Administrative Decision by serving upon NYSDEC and NYSOAG and filing with the Court a Notice of Request for Relief within fifteen (15) days of receiving the Final Administrative Decision, with supporting papers to be filed within thirty (30) days of filing of such Notice. State Plaintiffs shall have thirty (30) days after service of ExxonMobil's supporting papers to file opposition papers. ExxonMobil shall have fifteen (15) days after service of the opposition papers to file reply papers. The Request for Relief will be governed by the Federal Rules of Civil Procedure. The parties may agree, in writing, to extend the period within which their respective papers must be filed.

b.      Except to the extent provided in Paragraph 8 above, in ExxonMobil's challenge to a Final Administrative Decision, ExxonMobil shall have the burden to prove that the Determination was arbitrary and capricious or otherwise contrary to law. The parties agree to extend subsequent compliance dates appropriately during the period of formal dispute resolution, unless it is determined by the Court that the challenge was brought in bad faith.

c.      The State Plaintiffs and ExxonMobil reserve all rights under applicable court rules and law with regard to Judicial Resolution.

84.      The invocation of dispute resolution shall not extend, postpone, or modify ExxonMobil's obligations under this Decree with respect to any item not in dispute, unless or until NYSDEC agrees or a Court orders otherwise.

85.      Subject to the terms in this Decree, in the event that ExxonMobil seeks judicial review of the Final Administrative Decision, ExxonMobil shall be in violation of this Decree from the time it should have commenced the work disputed or otherwise complied with a provision of this Decree or of a work plan submitted pursuant to this Decree, unless ExxonMobil prevails in its challenge to the Final Administrative Decision, or as otherwise ruled by the Court or agreed upon by the Parties.

## XXII.    Release and Covenant Not to Sue

86.      In consideration of the payments made by ExxonMobil pursuant to the terms of this Decree, and except as specifically provided in Paragraphs 70-72, 74, 88, 90, and 94 hereof, State Plaintiffs fully and forever release and discharge ExxonMobil and its past, present and future parents, subsidiaries, divisions, affiliates, and related entities, including ExxonMobil Environmental Services Company, and their past, present and future employees, officers, agents and directors (the "ExxonMobil Releasees") for any and all claims or allegations of the State Plaintiffs of any nature whatsoever for the investigation, remediation, restoration, past costs, future oversight costs, damages (including Natural Resource Damages), and/or penalties related to any contamination within the Site or any contamination outside the Site that emanated from the Site and was caused by ExxonMobil, and any and all claims or allegations of the State Plaintiffs in the State Complaint, or related to the On-Site Order or the Off-Site Order (the "Matters Addressed"). This release includes the release of any claim of the State Plaintiffs for

23

damages (including Natural Resource Damages), future oversight costs, civil and administrative penalties or other monetary relief against ExxonMobil with respect to any contamination within the properties identified on the Site Map as the Metro Property, the BP Property, the Peerless Property, or the 100-120 Apollo Street Property.

87.     Contingent on ExxonMobil's compliance with the terms of the Consent Decree, and subject to the Reservation of Rights above, the State covenants not to sue, execute judgment, or take any civil, judicial or administrative action under any federal, state, local or common law (other than enforcement of the Consent Decree) or to seek any costs, damages, contribution or attorneys' fees against the ExxonMobil Releasees for Matters Addressed.

88.     The release and covenant not to sue set forth above do not pertain to any matters other than the Matters Addressed.  State Plaintiffs reserve, and this Decree is without prejudice to, all rights against ExxonMobil with respect to all other matters, including but not limited to:

a.      liability for failure of ExxonMobil to meet a requirement of this Consent Decree; and

b.      liability for costs incurred or to be incurred by the State that are not within the definition of Matters Addressed.

89.     ExxonMobil retains the defenses it now has or may have as to such other matters: provided, however, that ExxonMobil specifically acknowledges and agrees that none of the payments which it agreed to make to the State Plaintiffs pursuant to this Consent Decree shall be construed as constituting a payment for injury to, loss of, or destruction of natural resources under the trusteeship of any federal or non-State natural resource trustees, except the $10,000 payment identified in Paragraph 44 (and subject to the limitations therein), which as specified in that Paragraph exclusively resolves claims of the State Plaintiffs.

90.     The discharge, release and covenant not to sue provided in this Decree and letters that may be issued pursuant to Paragraph 94 of this Decree shall not apply to claims seeking investigation or remediation of any condition related to the Site that both:  (i) was not known by State Plaintiffs on or before the Effective Date of this Decree, and (ii) indicates that the remedial actions required by this Decree are not protective of human health or the environment.  The State expressly waives any and all of its rights to recover damages (including any right of the State to recover Natural Resource Damages), civil and administrative penalties or other monetary relief from ExxonMobil in connection with any such condition or claims.

91.     Subject to the reservation of rights above, ExxonMobil covenants not to sue, execute judgment, or take any civil, judicial or administrative action under any federal, state, local or common law (other than enforcement of the Consent Decree) or to seek any costs, damages, contribution or attorneys' fees against State Plaintiffs for Matters Addressed.

## XXIII.   Meetings

92.     ExxonMobil shall comply with the technical and public outreach meeting obligations described in Article X of the CAP.

24

## XXIV.    Citizen Participation Plan

93.    ExxonMobil shall comply with the obligations related to creating a Citizen Participation Plan set forth in Article XVIII of the CAP.

## XXV.    Closure

94.    NYSDEC, upon submission by ExxonMobil of satisfactory documentation with respect to each Operable Unit or contaminated medium addressed pursuant to the terms and conditions of this Decree (as set forth in the CAP) showing that ExxonMobil has substantially complied with the requirements of this Decree with respect to that Operable Unit or contaminated medium, shall issue a letter (within a reasonable time period) confirming that ExxonMobil has completed the requirements of the Decree with respect to that Operable Unit or contaminated medium.  Prior to termination of this Decree pursuant to Paragraph 109, the letter of completion does not limit the State's rights concerning any further investigation and/or remediation the Department deems necessary due to contamination for which ExxonMobil is responsible for investigation and/or remediation pursuant to this Decree and the CAP, if, in light of such conditions and the designated uses of the Site, the cleanup of the Site is no longer protective of public health or the environment.  Moreover, any such letter of completion shall not terminate ExxonMobil's obligations under the Soil and Residual Contamination Management Plan in Article VII of the CAP.  The State expressly waives any and all of its rights to recover damages (including any right of the State to recover Natural Resource Damages), civil and administrative penalties or other monetary relief from ExxonMobil in connection with any such condition or claims.

## XXVI.    Miscellaneous

95.    The Court, by entering this Decree, finds that State Plaintiffs have commenced and are diligently pursuing this action in part to abate conditions the State contends may present an imminent and substantial endangerment to human health or the environment.

96.    ExxonMobil may retain professional consultants, contractors, laboratories, and quality assurance/quality control personnel to perform their obligations under this Decree.  As to any such consultant that ExxonMobil retains that is expected (1) to serve as a prime contractor or otherwise have substantial and continuous responsibility for performance of ExxonMobil's obligations under this Decree, or (2) to assist ExxonMobil by acting as primary author of a report in connection with ExxonMobil's obligations under this Decree with respect to a) groundwater modelling and interpretation, b) human health exposure assessment, c) ecological exposure assessment, d) evaluation of alternative remedial technologies, e) remedy design and implementation, or f) implementation of IRMs (collectively, "Covered Consultant"), such Covered Consultant must (1) have substantial expertise and experience in environmental investigation and remediation, and (2) be of high integrity.  The parties agree that ExxonMobil's current prime contractor, Roux Associates, Inc., has been approved as a Covered Consultant for the work required under this Decree.  If it plans to retain any other Covered Consultant, ExxonMobil shall, at least 30 days prior to the commencement of work by the Covered Consultant, submit the Covered Consultant's experience, capabilities, and qualifications to the NYSOAG for review.  NYSOAG shall determine the acceptability of the Covered Consultant

25

within 15 days of the submittal. Approval of any Covered Consultant shall not be unreasonably withheld. Failure to respond within a total of 15 days after ExxonMobil's submittal shall be deemed approval of the Covered Consultant. If NYSOAG disapproves of ExxonMobil's proposed Covered Consultant in writing within 15 days after ExxonMobil submits the Covered Consultant's experience, capabilities, and qualifications to the NYSOAG for review, NYSOAG and ExxonMobil shall confer in an attempt to resolve the dispute. If the dispute has not been resolved within 15 days, it shall be referred to this Court for resolution. In any such proceeding, ExxonMobil's selection of its Covered Consultant shall be approved unless the NYSOAG demonstrates that ExxonMobil's proposed Covered Consultant (1) lacks the requisite experience, capabilities and qualifications, or (2) is not of high integrity. In the event of any such proceeding, ExxonMobil shall not be subject to any fines, penalties, or other liability, including any stipulated penalties to which it otherwise would be subject under this Agreement, for any delays resulting from any such proceeding before this Court if its selection of a Covered Consultant is upheld by the Court or as otherwise determined by the Court. ExxonMobil shall ensure that any laboratory or quality assurance/quality control firm utilized shall meet the criteria set forth in DER-10. The responsibility for the performance of all contractors and consultants retained by ExxonMobil shall rest solely with ExxonMobil. Subject to the requirements of this Paragraph, ExxonMobil retains the right to select or change professional consultants, contractors, laboratories and quality assurance/quality control personnel in its sole discretion. Moreover, nothing in this Paragraph or elsewhere in this Agreement shall preclude ExxonMobil from providing qualified in-house personnel to perform work required by this Decree.

97.     The paragraph headings set forth in this Decree are included for convenience of reference only and shall be disregarded in the construction and interpretation of any provisions of this Decree.

98.     The terms of this Decree shall constitute the complete and entire agreement between State Plaintiffs and ExxonMobil concerning the implementation of the activities required by this Decree, and this Decree supersedes and terminates any and all prior orders, including the On-Site Order and Off-Site Order, or agreements between the parties related to the Site. No term, condition, understanding, or agreement purporting to modify or vary any term of this Decree shall be binding unless made in writing and subscribed by the party to be bound and approved by the Court. No informal advice, guidance, suggestion, or comment by State Plaintiffs shall be construed as relieving ExxonMobil of its obligation to obtain such formal approvals as may be required by this Decree.

99.     To the extent authorized under 42 U.S.C.§9613, New York General Obligations Law§15-108, and any other applicable law, ExxonMobil shall be deemed to have resolved its liability to the State for purposes of contribution protection provided by CERCLA Section 113(f)(2) for Matters Addressed pursuant to and in accordance with this Consent Decree. Matters Addressed, as defined in Paragraph 86 above, shall include all response actions, within the meaning of CERCLA, 42 U.S.C.§9601(25), taken by ExxonMobil to implement this Consent Decree, and all response costs, within the meaning of CERCLA, 42 U.S.C.§9607(a), incurred and to be incurred by any person or party in connection with the work performed under this Consent Decree, which costs have been paid or reimbursed by ExxonMobil, including reimbursement of the State's costs pursuant to this Consent Decree. Furthermore, to the extent authorized under 42 U.S.C.§9613(f)(3)(B) or other provisions of CERCLA, by entering into this

26

judicial settlement of liability for the Matters Addressed herein, ExxonMobil may seek contribution from any person except those who are entitled to contribution protection under 42 U.S.C. § 9613(f)(2).

100.    Unless otherwise expressly provided herein and/or in the CAP, terms used in this Decree that are defined in ECL Article 17 and the Navigation Law or in regulations promulgated thereunder shall have the meaning assigned to them under said statute or regulations.

101.    Except as provided in Paragraph 32, ExxonMobil's performance of obligations or payments under this Decree shall not be deemed to constitute any type of fine or penalty or performance in lieu of penalties.

102.    Any payments and all correspondence related to this Decree must reference CD COD-AOD 10-133.

103.    ExxonMobil shall be bound by this Decree. Any change in ownership or corporate status of ExxonMobil shall in no way alter its responsibilities under this Decree.

104.    This Decree may be executed for the convenience of the parties hereto, individually or in combination, in one or more counterparts, each of which shall be deemed to have the status of an executed original and all of which shall together constitute one and the same.

105.    Although not required by law, it is the intent of the Parties to provide for public notice and comment with respect to this Decree in the Greenpoint community. The Parties agree and acknowledge that final approval by the State Plaintiffs and the entry of this Decree are subject to the State Plaintiffs' review of comments submitted by the public and that the State Plaintiffs may withdraw or withhold consent if the comments disclose facts or considerations that indicate that the Decree or a part of the Decree is not in the public interest. ExxonMobil shall not oppose entry of this Decree by this Court or challenge any provision of this Decree unless the State Plaintiffs have notified ExxonMobil, in writing, that the State Plaintiffs no longer support entry of the Decree.

106.    State Plaintiffs shall submit this Decree to EPA and the U.S. Department of Justice ("DOJ") within three (3) days of the execution of this Decree for review consistent with 40 C.F.R. § 135.5. In the event that EPA or DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

## XXVII. Effective Date

107.    The Effective Date of this Decree is the day after it is entered by the Court.

108.    Within 10 days after the Effective Date, the State Plaintiffs shall file a Stipulation of Dismissal in the form of Exhibit 3 to this Decree.

**XXVIII. Continuing Jurisdiction**

109.    This Court hereby retains, and the parties consent to, agree not to contest, and waive any defenses based on, jurisdiction over any and all disputes arising under or related to this Decree from the Effective Date until the parties agree in writing filed with the Court that such jurisdiction is no longer necessary or appropriate, provided, however, that ExxonMobil's obligations under the Soil and Residual Contamination Management Plan under Article VII of the CAP shall not thereby terminate.

**XXIX.    Signatories**

110.    Each of the undersigned representatives certifies that he or she is fully authorized to enter into the Decree on behalf of such Parties, and to execute and to bind such Parties to the Decree.

ORDERED, ADJUDGED AND DECREED this 28ᵗʰ day of February, 2011,

s/KAM

_____
United States District Judge

28

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *State of New York* v. *Exxon Mobil Corporation*, No. 07-CV-2902 (KAM/RML) (E.D.N.Y.)

STATE OF NEW YORK AND NEW YORK
STATE DEPARTMENT OF ENVIRONMENTAL
CONSERVATION

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

Dated: 1-24-11

By: _____
Todd D. Ommen
Deputy Bureau Chief
New York State Department of Law
120 Broadway
New York, New York 10271

29

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *State of New York* v. *Exxon Mobil Corporation*, No. 07-CV-2902 (KAM/RML) (E.D.N.Y.)


EXXON MOBIL CORPORATION

Dated: _Jan 24, 2011_                    By: _____
                                              Mike W. Schwehr
                                              Agent and Attorney in Fact
                                              ExxonMobil Environmental Services Company
                                              3225 Gallows Road
                                              Fairfax, VA 22037


EXXONMOBIL OIL CORPORATION

Dated: _Jan 24, 2011_                    By: _____
                                              Mike W. Schwehr
                                              Agent and Attorney in Fact
                                              ExxonMobil Environmental Services Company
                                              3225 Gallows Road
                                              Fairfax, VA 22037

30